Matter of Levine (2019 NY Slip Op 00081)





Matter of Levine


2019 NY Slip Op 00081


Decided on January 8, 2019


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 8, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick, Justice Presiding,
Judith J. Gische
Marcy L. Kahn
Cynthia S. Kern
Peter H. Moulton, Justices.


M-3329

[*1]In the Matter of Harold Levine, an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Harold Levine, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Harold Levine, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on November 5, 1984.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Raymond Vallejo, of counsel), for petitioner.
Hal R. Leiberman, Esq. for respondent.



PER CURIAM


Respondent Harold Levine was admitted to the practice of law in the State of New York by the First Judicial Department on November 5, 1984. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.
On June 12, 2017, respondent was convicted, upon his plea of guilty, in the United States District Court for the Southern District of New York, of corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws in violation of 26 USC § 7212(a) and tax evasion in violation of 26 USC § 7201, both federal felonies.
On October 11, 2017, respondent was sentenced to two years in prison, followed by three years of supervised release, and ordered to pay $1.5 million in restitution to the Internal Revenue Service (IRS) for his unpaid tax debt.
Respondent's convictions stemmed from his alleged participation in a tax evasion scheme involving his diversion of millions of dollars of tax shelter fee income from his law firm to himself, and his failure to declare these fees as income to the IRS.
The Attorney Grievance Committee (the Committee) seeks an order striking respondent's name from the roll of attorneys,
pursuant to Judiciary Law § 90(4)(a) and (b) and the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.12(c)(1), on the ground that he was convicted of a felony as defined by Judiciary Law § 90(4)(e) and has therefore been automatically disbarred; or, in the alternative, determining that the crimes of which respondent has been convicted are "serious crimes" as defined by Judiciary Law § 90(4)(d); immediately suspending him from the practice of law and directing respondent to show cause before a referee why a final order of censure, suspension or disbarment should not be made.
Respondent opposes the motion insofar as it seeks to strike his name from the roll of attorneys. He asserts that automatic disbarment is not warranted here. Respondent concedes that the crimes to which he pled guilty are "serious crimes" and suggests referring this matter for a sanction hearing upon his release from prison.
Judiciary Law § 90(4)(a) authorizes automatic disbarment of an attorney convicted of a felony. Under Judiciary Law § 90(4)(e), a felony is defined as "any criminal offense classified as a felony under the laws of this state or any criminal offense committed in any other state, district, or territory of the United States and classified as a felony therein which if committed within this state, would constitute a felony in this state." "A conviction of a federal felony only triggers automatic disbarment if the offense would constitute a felony under the New York Penal Law" (Matter of Adams, 114 AD3d 1, 2 [1st Dept 2013]). "If it is not a mirror image,' the federal felony must be essentially similar' to a New York felony" (id.). "Essential similarity can be demonstrated through the respondent's admissions made under oath during his or her plea allocution, which may be read in conjunction with the indictment or information" (Matter of Doonan, 157 AD3d 44, 46 [1st Dept 2017]; see also Matter of Salvatore, 139 AD3d 192 [1st Dept 2016][finding that essential similarity was established by looking to the respondent's admissions during the plea allocution, when read in conjunction with, inter alia, the statements made by the prosecutor at the plea hearing and the indictment]; Matter of Adams, 114 AD3d at 2-3 [the essential similarity can be shown in admissions under oath made during a respondent's plea allocutions, read in conjunction with the federal indictment or information]).
The Committee contends that automatic disbarment is warranted because the federal felonies of which respondent was convicted are essentially similar to the New York State felony of scheme to defraud in the first degree (Penal Law § 190.65), which provides:
"[a] person is guilty of a scheme to defraud in the first degree when he or she ... engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of one thousand dollars from one or more such persons."
We find that automatic disbarment is not warranted in the present case as respondent's plea admissions, when read in conjunction with the indictment and other testimony, do not establish "essential similarity" between the federal felonies of which respondent was convicted and the New York State felony of scheme to defraud in the first degree [FN1]. Respondent never admitted that he engaged in any scheme to defraud. His plea admissions were limited to his acknowledgment that he failed to report in excess of $10,000 in income for each of the six years at issue. Respondent did not admit to engaging in a "systematic ongoing course of conduct" by which he wrongfully obtained property "with a value in excess of one thousand dollars" from a defrauded party. Moreover, in his written plea agreement, respondent reserved his right to argue that his receipt of the unreported income did not warrant an upward adjustment in his sentence under the federal sentencing guidelines because, contrary to the government's position, it was not "income . . . from [a] criminal activity" and the court declined to make such an upward adjustment when it calculated respondent's sentence.
The Committee takes the position that there is an essential similarity between the federal felonies of which respondent was convicted and the New York State felony of scheme to defraud in the first degree based on the allegations in the indictment that respondent "secretly and unlawfully diverted from a major law firm" over $3 million in fraudulently obtained fee income from tax shelter and related transactions that he worked on while serving as a partner of the law firm, that respondent caused false statements to be made to the IRS, and that respondent evaded a substantial part of his income tax due and owing to the IRS by filing a false tax return which did not include the unlawfully diverted income. Additionally, the Committee relies on the statements made by the prosecutor at respondent's sentencing in which the prosecutor emphasized that respondent's crimes encompassed deceiving his law partners by hiding substantial fee income in blatant contravention of the terms of their partnership agreement, as well as the statements of the sentencing court when it highlighted the protracted and dishonest nature of respondent's actions, which deprived the federal government of significant tax revenue. Further, the Committee points to the fact that when the sentencing court gave respondent a chance to be heard in response to those statements, he did not dispute the prosecutor's recitation of respondent's deceit of his partners.
However, respondent never admitted to any of the allegations in the indictment that he engaged in a scheme to defraud his law partners. All that he admitted to was that he failed to report income to the IRS. Respondent reserved his right to argue that he should not receive an upward adjustment because he did not receive any income from a criminal activity, thereby disputing any statements made by the prosecution and sentencing court that he engaged in a scheme to defraud.
As the federal felonies of which respondent was convicted are "serious crimes" within the meaning of Judiciary Law § 90(4)(d) (see Matter of Stein, 137 AD3d 104, 106 [1st Dept 2016]; Matter of Shapiro, 81 AD3d 25, 26-27 [1st Dept 2011]), respondent is immediately suspended from the practice of law and is directed to show cause before a referee why a final order of censure, suspension or disbarment should not be made (Judiciary Law § 90[4][f] and [g], 22 NYCRR 1240.12[c][2]).
All concur.
Order filed. [January 8, 2018]
Ordered that the motion is granted to the extent of deeming the offense of which respondent has been found guilty to be a "serious crime" and respondent is suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending have been concluded, and until further order of this Court.



Footnotes

Footnote 1: We are not rendering an opinion as to whether the federal felonies of which respondent was convicted are essentially similar to the New York State felony of offering a false instrument for filing in the first degree (Penal Law § 175.35) as the Committee has not made that argument in this case (cf. Matter of Doonan, 157 AD3d at 46-47.